# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

SAMUEL HOWARD,

    Petitioner,

vs.

E.K. McDANIEL, *et al.*,

    Respondents.

2:93-CV-01209-LRH-LRL

**ORDER**

    In this capital habeas case, petitioner Howard has filed a motion for reconsideration (docket #244) of this court's order of July 26, 2006 (docket #211) granting respondents' motion to dismiss (docket #206) portions of his third amended petition for writ of habeas corpus (docket #189). The court granted the motion to dismiss because it had concluded that several of Howard's habeas claims are barred from review under the doctrine of procedural default. Prior to granting the motion, the court allowed Howard's previous counsel, Patricia Erickson, two extensions of time within which to oppose the motion. Docket ##208/210. When counsel failed to file an opposition, despite having nearly seven months within which to do so, the court granted the motion and ordered the respondents to answer Howard's remaining claims.

    In February of 2007, this court relieved Erickson as Howard's counsel and appointed the Federal Public Defender to represent Howard in this case. Docket ## 222/223. In seeking reconsideration of the court's decision to bar several of his claims as procedurally defaulted, Howard contends that his prior counsel's failure to file an opposition to the motion to dismiss was either due to excusable neglect or the product of a conflict of interest that the court should have resolved prior

1  to ruling on the respondents' motion to dismiss.  Howard further argues that, upon due consideration,
2  this court must reverse its decision that Nevada's one-year time limit on post-conviction petitions
3  (Nev.Rev. Stat. § 34.726) is an "adequate" procedural rule for the purpose of barring federal court
4  review.  Alternatively, Howard contends that his procedural defaults are excused, under Nevada law,
5  because he is "innocent of the death penalty."

6        A district court may rescind, reconsider, or amend a previous order pursuant to its inherent
7  power to modify interlocutory orders before entry of final judgment.  *City of Los Angeles, Harbor*
8  *Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886-87 (9th Cir. 2001).  Because of the unique
9  circumstances presented by this case, this court agrees that Howard's application for habeas relief
10 should not be undermined by his former counsel's failure to oppose the respondents' motion to
11 dismiss his petition.  Thus, the court has reviewed its dismissal of Howard's habeas claims on
12 procedural default grounds, this time taking into consideration the substantive arguments contained
13 in Howard's motion for reconsideration, the respondents' response thereto (docket #253), and
14 Howard's subsequent reply (docket #258).

15       It is well-established that a federal court will not review a claim for habeas corpus relief if the
16 decision of the state court denying the claim rested on a state law ground that is independent of the
17 federal question and adequate to support the judgment.  *Coleman v. Thompson*, 501 U.S. 722, 730-
18 31 (1991).  In claiming that this court erred in its procedural default analysis, Howard argues that,
19 even though the Nevada Supreme Court dismissed his habeas claims on state law grounds, the
20 procedural bars applied to the claims are not "adequate" to preclude federal court review of the
21 merits of those claims.[1]  While Howard challenges the adequacy of other procedural bars and the
22 Nevada's Supreme Court application of procedural bars in general, the only procedural bar at issue
23 here is the timeliness rule set forth at Nev. Rev. Stat. § 34.726.  See docket #211, p. 6.

24       A state procedural rule is "adequate" if it is "clear, consistently applied, and well-established
25 at the time of the petitioner's purported default."  *Calderon v. United States Dist. Court*, 96 F.3d

---

[1] The procedural history of Howard's case and a discussion of the procedural bars applied by the Nevada Supreme Court are set forth in the court's order of July 26, 2006. Docket #211; pp. 1-3, 5.

2

1126, 1129 (9th Cir. 1996) (citation and internal quotation marks omitted). In granting respondents' motion to dismiss on procedural default grounds, this court adhered to the burden-shifting analysis mandated by *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003), to determine the adequacy of Nevada's timeliness bar under Nev. Rev. Stat. § 34.726. Under *Bennett*, the State carries the initial burden of adequately pleading "the existence of an independent and adequate state procedural ground as an affirmative defense." *Id*. at 586. The burden then shifts to the petitioner "to place that defense in issue," which the petitioner may do "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id.* Assuming the petitioner has met his burden, "the ultimate burden" of proving the adequacy of the state bar rests with the State, which must demonstrate "that the state procedural rule has been regularly and consistently applied in habeas actions." *Id*.

Because Howard failed to file an opposition to respondents' motion to dismiss, this court's *Bennett* analysis began and ended with the determination that the State had carried its initial burden of pleading "the existence of an independent and adequate state procedural ground as an affirmative defense" by asserting the timeliness bar under Nev. Rev. Stat. § 34.726 and citing to *Moran v. McDaniel*, 80 F.3d 1261 (9th Cir. 1996). Docket #211, p. 6. Howard now argues that Nevada's procedural default rules, including Nev. Rev. Stat. § 34.726, are inadequate because the Nevada Supreme Court has always exercised unfettered discretion in applying them.

As for the Ninth Circuit's determination in *Moran* that the Nevada Supreme Court has consistently applied statutory timeliness bars, including Nev. Rev. Stat. § 34.726, Howard argues that the holding does not control the result here because *Moran* predates both the burden-shifting regime set forth in *Bennett* and the Ninth Circuit's approval of the use of unpublished decisions to show inconsistent application of a state procedural rule (*see Powell v. Lambert*, 357 F.3d 871, 879 (9th Cir. 2004)). Unquestionably, the manner in which the adequacy issue is litigated has undergone substantial changes since the Ninth Circuit decided *Moran*. Moreover, the burden-shifting mandated in *Bennett* suggests that adequacy is an issue that can or must be decided on a case-by-case basis.

Even so, a post-*Bennett* Ninth Circuit case instructs that the court's past determinations as to

3

the adequacy of a procedural rule for a given time period are to be accorded deference in applying the *Bennett* analysis. In *King v. Lamarque*, the court held as follows:

> In *Ortiz v. Stewart*, 149 F.3d 923 (9th Cir.1998), we held that a petitioner had not met his burden because we had already held the state procedural rule to be consistently applied and the petitioner failed to cite cases demonstrating *subsequent* inconsistent application. *Id*. at 932. *This holding helps prevent inconsistent determinations regarding a state procedural rule's adequacy during a given time period*. This same reasoning provides a firm foundation for applying the *Ortiz* requirement bilaterally. Once we have found a state procedural rule to be inadequate, petitioners may fulfill their burden under *Bennett* by simply challenging the adequacy of the procedure; the burden then shifts back to the government to demonstrate that the law has *subsequently* become adequate. . . .
>
> This holding is necessary to maintain the primary principle we announced in *Bennett*: the government bears the ultimate burden of establishing the adequacy of a rule. This burden should exist whether or not the petitioner identifies the correct basis upon which to challenge the adequacy of the rule. If we held otherwise, the government could avoid its burden under *Bennett*, and illogical results would occur. Here, for example, we would bar King's claim based on a procedural rule already found to be inadequate. *In essence, we would be holding that the same rule is adequate in some cases and inadequate in others. This defies common sense. A procedural rule is either adequate or inadequate during a given time period; its adequacy does not depend upon the facts of a petitioner's case*.

464 F.3d 963, 967-68 (9th Cir. 2006) (emphasis added). Thus, based on *King*, this court is bound by the Ninth Circuit's determination that, as of March 1996 (the relevant date in *Moran*), the Nevada Supreme Court had consistently applied statutory timeliness bars to post-conviction petitions.

Whether the Nevada Supreme Court continued to consistently apply Nev. Rev. Stat. § 34.726 to post-conviction petitions after March 1996 remains open to contention under *Bennett*. Indeed, the court in both *Ortiz* and *King* made clear that either the petitioner or the government, as the case may be, can challenge a previous Ninth Circuit adequacy determination by showing how the state applied the rule in subsequent cases.[2]

---

[2] In *King*, the court stated:

> Here, because we held in *Morales* that the California timeliness rule was insufficiently clear, the government must show on remand that the rule has since been clarified for noncapital cases and that the clarified rule has since been consistently applied.

*King*, 464 F.3d at 967. Similarly, in *Ortiz*, the court stated:

4

According to Howard, an example of the Nevada Supreme Court's inconsistent application of Nev. Rev. Stat. § 34.726 can be found in *Rippo v. State*, 146 P.3d 279, 285 (Nev. 2006), where the court addressed whether a certain penalty phase jury instruction regarding the consideration of mitigating circumstances was improper. Howard notes that the Nevada Supreme Court raised the issue *sua sponte* long after the time limit imposed by Nev. Rev. Stat. § 34.726 had passed. In addition to the *Rippo* case, Howard cites several instances, in both published and unpublished opinions, where the Nevada Supreme Court did not use Nev. Rev. Stat. § 34.726 to bar claims even though application of the rule appeared to be warranted. Docket #244, p. 16-17. By using specific factual allegations and evidence to assert the inadequacy of Nev. Rev. Stat. § 34.726, Howard has carried his modest burden under *Bennett* with respect to the time period between March 1996 and the date he filed his time-barred state petition (December 20, 2002). *See Bennett*, 322 F.3d at 586; *Powell*, 357 F.3d at 876.

Thus, the "ultimate burden" of proving the adequacy of Nev. Rev. Stat. § 34.726 falls upon the respondents. *Bennett*, 322 F.3d at 585. This court must consider unpublished as well as published decisions of the Nevada Supreme Court to determine whether that court had, "in actual practice, a clear, consistently applied, and well-established rule at the time of [Howard's] purported default." *Powell*, 357 F.3d at 872, 879 (internal quotation marks omitted). This examination "should be limited to the language of the state court opinions" rather than "based on a *post hoc* examination of the pleadings and record" in the cases reviewed. *Bennett*, 322 F.3d at 584. A rule need not be applied in every case to be considered consistently applied; however, it must be applied in the "vast majority of cases." *Dugger v. Adams*, 489 U.S. 401, 410-411 n. 6 (1989).

In *Bennett*, the Ninth Circuit indicated that the scope of the state's "ultimate burden" would depend on the nature and depth of the petitioner's allegations of inadequacy. *Bennett*, 322 F.3d at

---

> Ortiz has not pointed to any Arizona decisions after our *Poland* opinion that demonstrate that Arizona has become inconsistent and irregular in its reliance on procedural default.

*Ortiz*, 149 F.3d at 932.

584-85, (quoting *Hooks v. Ward*, 184 F.3d 1206, 1217 (10th Cir.1999)).  Here, the respondents have provided their explanations as to why the published and unpublished opinions relied upon by Howard do not establish that the Nevada Supreme Court has been inconsistent in applying Nev. Rev. Stat. § 34.726.  With respect to published Nevada cases predating the issuance of *Moran*, respondents correctly point out that these cases were available for consideration by the Ninth Circuit when it determined that the Nevada Supreme Court had consistently applied its procedural rules to bar untimely claims.  Because this court is bound by *Moran* for the time period addressed by that case, the inquiry here must be directed towards Nevada Supreme Court opinions issued after March 1996.

      Respondents dispute that *Rippo* is evidence of inconsistent application by pointing out that the published opinion contains neither a reference to Nev. Rev. Stat. § 34.726, nor any indication that Rippo's petition was untimely filed.  Respondents also point out that the Nevada Supreme Court expressly found "good cause" to entertain Rippo's belated *McConnell* claim.[3]  The state petition for writ of habeas corpus that gave rise to the appeal in *Rippo* was, in fact, filed in a timely manner.  146 P.3d at 282.  The state district court had already denied Rippo's petition when the Nevada Supreme Court issued its decision in *McConnell,* but the Nevada Supreme Court found good cause for Rippo raising the claim on appeal, as opposed to returning to the lower court, because the legal basis for the claim "was not available at the time he pursued his habeas petition in the district court" and because the claim "present[ed] questions of law that [did] not require factual determinations outside the record."  *Id*. at 283 (internal citations omitted).

      Howard's suggestion that the Nevada Supreme Court circumvented Nev. Rev. Stat. § 34.726 in raising the jury instruction issue *sua sponte* after the one-year time limit is misleading because the issue was ancillary to the court's adjudication of Rippo's *McConnell* claim. The court's subsequent opinion shows that the court sought oral argument on the issue, not as a freestanding ground for

---

[3]  In *McConnell v. State*, the Nevada Supreme Court held that "it [is] impermissible under the United States and Nevada Constitutions to base an aggravating circumstance in a capital prosecution on the felony upon which a felony murder is predicated."  102 P.3d 606, 624 (Nev. 2004).

6

relief, but because of the issue's potential impact on the court's harmless error analysis. *See id*. at 285, 287-88. Thus, the Nevada Supreme Court in *Rippo* did not arbitrarily overlook statutory default rules, as Howard claims. Instead, the court merely solicited oral argument on an aspect of a broader habeas claim (i.e., Rippo's *McConnell* claim) that had been raised in a manner consistent with Nevada law.

Accordingly, there is no merit to Howard's claim that, in light of *Rippo*, the application of procedural rules to bar consideration of the merits of his habeas claims would constitute a violation of the equal protection and due process clauses of the Fourteenth Amendment. In presenting habeas claims in a state petition filed more than 15 years after his conviction became final, Howard was not "similarly-situated" to Rippo in the proceeding described above; and, the Nevada Supreme Court's rejection of those claims as untimely did not constitute "arbitrarily disparate treatment." See docket #244, p. 13 (citing *Bush v. Gore*, 531 U.S. 98, 106-09 (2000); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564-65 (2000); and *Myers v. Ylst*, 897 F.2d 417, 421 (9th Cir. 1990)).

Of the several other published Nevada Supreme Court opinions that Howard cites to support his claim that the Nevada Supreme Court is inconsistent in applying Nev. Rev. Stat. § 34.726, only *Bejarano v. Warden*, 929 P.2d 922 (Nev. 1996) and *Hill v. State*, 953 P.2d 1077 (Nev. 1998) were issued after the Ninth Circuit decided *Moran*. Respondents correctly note that the Nevada Supreme Court in *Bejarano* expressly addressed whether Bejarano's default should be excused based on cause and prejudice. Moreover, the court concluded that Bejarano had, in fact, failed to meet his burden under the cause and prejudice exception. *Bejarano*, 929 P.2d at 926. While the court briefly addressed, in a footnote, Bejarano's claim that his direct appeal counsel was ineffective, the court clearly upheld the lower court's rejection of Bejarano's state petition on procedural grounds. *Id*. As such, *Bejarano* does not show that the Nevada Supreme Court disregards procedural bars. *See Loveland v. Hatcher*, 231 F.3d 640, 643-44 (9th Cir.2000); *Moran*, 80 F.3d at 1269.

Respondents do not specifically address whether *Hill* stands as an example of the inconsistent application of Nev. Rev. Stat. § 34.726. In that case, the Nevada Supreme Court addressed a claim on the merits that was not raised in the lower court. *Hill*, 953 P.2d at 1084. Making no reference to

the timeliness of the claim, the state supreme court reasoned that "because this issue raises a claim of constitutional dimension which, if true, might invalidate Hill's death sentence and 'the record is sufficiently developed to provide an adequate basis for review,' we will address it." *Id*. (citation omitted). This court notes that, although Hill apparently raised the claim on appeal more than one year after his conviction became final, his petition in lower court was timely filed. *Id*. at at 1081. Under the circumstances, the Nevada Supreme Court's failure to apply Nev. Rev. Stat. § 34.726 to the lone claim does little to undermine the adequacy the rule.

As for the unpublished opinions cited by Howard,[4] respondents point out that, with respect to most of them, the Nevada Supreme Court did, in fact, impose a procedural bar to deny the petitioner's post-conviction claims. Docket #253, p. 5-7. In five of the opinions – *Farmer v. State*, Case No. 29120, 11/20/97 (Exhibit 106); *Nevius v. Warden*, Case Nos. 29027, 29028, 10/9/96 (Exhibit 118); *Riley v. State*, Case No. 33750, 11/19/99 (Exhibit 123); *Sechrest v. State*, Case No. 29170, 11/20/97 (Exhibit 126); and *Williams v. Warden*, Case No. 29084, 8/29/97 (Exhibit 131), the court did not invoke Nev. Rev. Stat. § 34.726, but relied on other procedural bars such as Nev. Rev. Stat. § 34.810(1) (calling for dismissal of claims that could have been raised in an earlier proceeding), Nev. Rev. Stat. § 34.810(2) (requiring the dismissal of successive petitions), or the doctrine of law of the case. While the state supreme court considered the merits of some of the barred claims, such review was expressly for the purpose of determining whether the default might be excused due to "cause and prejudice" or a "fundamental miscarriage of justice." *See*, *e.g.*, *Nevius*, Exhibit 118, p. 3-4 (cause and prejudice); *Williams*, Exhibit 131, p. 3-4 (miscarriage of justice).

While the Nevada Supreme Court may have been able to apply Nev. Rev. Stat. § 34.726 in the five cases above, respondents argue that the state supreme court's failure to impose all applicable

---

[4] With his motion for reconsideration, Howard has submitted 32 unpublished Nevada Supreme Court opinions, which he cites to support various arguments set forth in the motion. Docket #244-46, Exhibits 103-119, 121-135. He cites to nine of those opinions (i.e., Exhibits 106, 112, 114, 118, 119, 121, 123, 126, and 131) to support his specific claim that the Nevada Supreme Court fails to consistently apply statutory time bars to capital habeas petitioners. Docket #244, p. 16-17. Howard cites additional opinions in his reply to respondents' opposition to motion for reconsideration; however, all of the newly-cited opinions predate *Moran*. Docket #258, p. 13-14.

procedure bars does not undermine the adequacy of the ones not imposed. Respondents cite to the Nevada Supreme Court's treatment of the issue in *State v. Dist. Ct. (Riker)*, 112 P.3d 1070 (Nev. 2005). In *Riker*, the court reasoned:

> . . . A court need not discuss or decide every potential basis for its decision as long as one ground sufficient for the decision exists. This proposition is fundamental to legal analysis and judicial economy, as well as simple logic. Thus, our conclusion in a case that one procedural bar precludes relief carries no implication regarding the potential applicability of other procedural bars.

112 P.3d at 1079 (internal citations omitted). Although not controlling here, the state court's reasoning is sound; and, Howard has provided no contravening federal authority on the issue. Accordingly, this court concludes that the Nevada Supreme Court's opinions in the five above-noted cases do not undermine the State's ability to demonstrate that Nev. Rev. Stat. § 34.726 is an adequate procedural bar in this case.

As for the remaining four unpublished opinions Howard cites to show inconsistent application of the one-year time limit, respondents note that the Nevada Supreme Court applied Nev. Rev. Stat. § 34.726 in three of them – *Jones v. McDaniel*, *et al.*, Case No. 39091, 12/19/02 (Exhibit 112); *Milligan v. Warden*, Case No. 37845, 7/24/02 (Exhibit 114), and *O'Neill v. State*, Case No. 39143, 12/18/02 (Exhibit 121)). In both *Jones* and *Milligan*, the Nevada Supreme Court relied upon Nev. Rev. Stat. § 34.726 to affirm the lower court's dismissal of the petition on procedural grounds. Here again, the court's discussion of the merits of petitioner's claims in both cases was limited to addressing whether the default might be excused due to "cause and prejudice" or a "fundamental miscarriage of justice." *Jones*, Exhibit 112, p. 10-15; *Milligan*, Exhibit 114, p. 6-16. In *O'Neill*, the Nevada Supreme Court noted that O'Neill's petition was untimely under Nev Rev. Stat. § 34.726, but concluded that he could demonstrate sufficient cause and prejudice to excuse the default. Exhibit 121, p. 5. Thus, rather than show inconsistent application of Nev Rev. Stat. § 34.726, *Jones*, *Milligan*, and *O'Neill*, demonstrate just the opposite.

In only one unpublished opinion of the nine did the Nevada Supreme Court arbitrarily disregard a procedural rule to reach the merits of the petitioner's claim. In an order denying rehearing of the *Nevius* decision cited above, the court ruled on a cruel and unusual punishment

9

claim that was raised for the first time in petitioner's request for rehearing. *Nevius v. Warden*, Case Nos. 29027, 29028, 7/17/98 (Exhibit 119). The court noted that the Nevada Rules of Appellate Procedure barred such a claim, but, "in the interest of judicial economy," addressed the merits of the claim rather than remand it to the lower court. *Id*., p. 2-3. This minor deviation in the application of procedural rules does not impact the adequacy of Nev Rev. Stat. § 34.726 for the purposes of this case. *Dugger*, *supra*.

In addition to arguing that the opinions relied upon by Howard do not establish inconsistent application of Nev. Rev. Stat. § 34.726, respondents point to Ninth Circuit jurisprudence regarding the rule and list 261 Nevada Supreme Court opinions (almost all unpublished) in which they claim the court imposed the rule. With respect to the former, respondents cite *Collier v. Bayer*, 408 F.3d 1279, 1285 (9th Cir. 2005); *High v. Ignacio*, 408 F.3d 585, 590 (9th Cir. 2005); *Valerio v. Crawford*, 306 F.3d 742, 778 (9th Cir. 2002); *Loveland*, *supra*; and *Moran*, *supra*. None of these cases squarely addresses the adequacy of Nev. Rev. Stat. § 34.726 for any period after March 1996. Even so, all five cases (as cited above) mention or affirm the Nevada Supreme Court's consistent application of the state's timeliness bars.

The 261 Nevada Supreme Court opinions listed by respondents show the frequency and regularity with which the Nevada Supreme Court applies Nev. Rev. Stat. § 34.726. Even though the opinions all postdate the Ninth Circuit's holding in *Powell* (issued February 2004),[5] there is nothing to suggest that Nevada Supreme Court was less consistent in applying the bar prior to 2004.

Howard discounts respondents reliance on non-capital cases to reinforce the adequacy of Nev. Rev. Stat. § 34.726. He cites to *Valerio*, 306 F.3d at 778, and *Petrocelli v. Angelone*, 248 F.3d 877, 887-88 (9th Cir. 2001) to argue that noncapital cases are not relevant in assessing the adequacy of Nevada's procedural bars in capital cases. In both cases, the Ninth Circuit noted a difference in the way the Nevada courts applied a procedural bar in capital cases, as opposed to non-capital cases,

---

[5] According to respondents, the Nevada Attorney General's office began collecting unpublished cases citing Nev. Rev. Stat. § 34.726 as a result of the holding in *Powell* that unpublished cases are relevant to determining the adequacy of a procedural bar.

but the bar at issue was procedural default through failure to raise a claim in a prior proceeding. *See Valerio*, 306 F.3d at 778; *Petrocelli*, 248 F.3d at 888. In the absence of any authority to the contrary, this court concludes that the Nevada courts do not distinguish between capital and noncapital cases in applying Nev. Rev. Stat. § 34.726. *Cf. Bennett v. Mueller*, 322 F.3d 573, 583-84 (9th Cir. 2003) (recognizing that "California's rules governing timeliness in capital cases differ from those governing noncapital cases").

Based on the foregoing, this court concludes that the Nevada Supreme Court has continued, since *Moran*, to consistently apply Nev. Rev. Stat. § 34.726 to untimely petitions. Howard's default under the statute occurred sometime between January 1, 1994,[6] and December 20, 2002, the date he filed the state petition found untimely by the Nevada Supreme Court. Thus, the court affirms its previous decision that several of Howard's habeas claims are barred from review under the doctrine of procedural default

Lastly, Howard contends that his procedural defaults are excused, under Nevada law, because he is "innocent of the death penalty." In support of this argument, Howard explains, at length, why the aggravating factors applied in his case are invalid. According to Howard, his ineligibility for the death penalty requires the Nevada courts to review his habeas claims on the merits notwithstanding any procedural bars; and, as a result, he is filing yet another petition for writ of habeas corpus in the Nevada courts.

Howard is not arguing that his procedural default should be excused by this court under the federal standard for actual innocence of the death penalty. *See Sawyer v. Whitley*, 505 U.S. 333, 336 (1992). Instead, he is asserting that he can make the necessary showing under the state law equivalent, which in turn, means that the state courts will address the merits of his habeas claims. Therefore, according to Howard's argument, this court should allow the Nevada courts to adjudicate his newly-filed state petition instead of dismissing the procedurally defaulted claims in his pending

---

[6] Petitioners whose convictions became final prior to January 1, 1993, and who had timely filed a first petition under [Chapter 177], were allowed one year from the date Nev. Rev. Stat. § 34.726 became effective (January 1, 1993) to file any successive petitions. *Pellegrini v. State*, 34 P.3d 519, 529 (Nev. 2001).

11

federal petition.

Having considered Howard's argument, this court is simply not willing to issue what, in essence, amounts to a stay in these proceedings based on the assumption that the Nevada courts will consider the merits of Howard's habeas claims. For one, Howard's assertion that the Nevada courts will excuse his procedural defaults based on his "actual innocence" claim is speculative, at best. Second, even if the state courts find merit in his actual innocence claim, Howard is incorrect in stating that the state court would then consider the merits of *all* of his claims. Rather, the state court's review would presumably be confined to the particular claims based on invalid aggravating factors. *See*, *e.g.*, *Leslie v. Warden*, 59 P.3d 440, 445 (Nev. 2002). As respondents point out, most of the claims this court determined to be procedurally defaulted allege constitutional error in the guilt phase of Howard's trial or are otherwise unrelated to his death penalty eligibility. As such, the adjudication of this case shall proceed notwithstanding Howard's pending petition in state court.

**IT IS THEREFORE ORDERED** that petitioner's motion for reconsideration (docket #244) is GRANTED, but only to the extent that the court has conducted a *de novo* review of its July 26, 2007, decision to grant respondents' motion to dismiss (docket #206). The motion for reconsideration is otherwise DENIED. Claims 1, 3 through 9, 11, 12, 13, 15, 16, 17(3, 5-13, 17, and 19-22), and 18 through 23 of the third amended petition for writ of habeas corpus (docket #189) are DISMISSED as procedurally barred from review by this court.

**IT IS FURTHER ORDERED** that respondents shall have **sixty (60) days** from the date this order is filed in which to file and serve an **answer** to Claims 2, 10, 14, and 17(1, 2, 4, 14-16, and 18) of the third amended petition.

**IT IS FURTHER ORDERED** that, in all other respects, the schedule set forth in the scheduling order entered on March 25, 2005 (docket #191), shall remain in effect.

DATED this 8th day of January, 2008.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE