## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

\* \* \*

SAMUEL HOWARD,

Petitioner,

v.

TIMOTHY FILSON, et al.,

Respondents.

Case No. 2:93-cv-01209-LRH-VCF

**ORDER**

Before the court is petitioner's ex parte request for authorization for federal habeas counsel to appear in state court litigation. (Exhibit A, attached.)

Having reviewed the request, and having carefully considered the history and grounds specific to this pending federal habeas action, the court finds good cause to permit petitioner's federally-appointed counsel to represent him in the described successive state post-conviction proceeding in the Nevada courts. *See* 18 U.S.C. § 3599(e); *Harbison v. Bell*, 556 U.S. 180, 190 n.7 (2009). By granting petitioner's request, the court does not purport to encourage, approve, or convey any position with respect to the merits of the proposed litigation.

Based on the foregoing,

IT IS ORDERED that petitioner's request for authorization for federal habeas counsel to file the described state post-conviction action is GRANTED. Federally-

appointed counsel is authorized to represent petitioner in state court for the purpose of seeking state post-conviction relief as proposed in petitioner's request.

DATED this 17th day of July, 2018.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

# EXHIBIT

# A

# FEDERAL DEFENDER SERVICES OF IDAHO

SAMUEL RICHARD RUBIN
EXECUTIVE DIRECTOR

DEBORAH A. CZUBA
SUPERVISING ATTORNEY

**CAPITAL HABEAS UNIT**
702 W. IDAHO ST., STE. 900
BOISE, IDAHO 83702
(208) 331-5530
FAX (208) 331-5559

BRUCE D. LIVINGSTON
JONAH HORWITZ
CHRISTOPHER SANCHEZ

July 10, 2018

Sent Via Certified Letter:
The Honorable Larry R. Hicks
Senior United States District Court Judge
United States District Court for the District of Nevada
Bruce R. Thompson United States Courthouse
400 South Virginia Street, Suite 506
Reno, Nevada 89501

CC'd Via Email to:
Elaine Muhlebach
Judicial Assistant to Judge Hicks
Elaine_Muhlebach@nvd.uscourts.gov

Re: Second ex parte request for approval to file successive state post-conviction action in *Howard v. Baker*, No. 2:93-cv-1209

Dear Judge Hicks:

We represent Petitioner Samuel Howard in *Howard v. Baker*, No. 2:93-cv-1209, a capital habeas case that is currently pending before you. Pursuant to guidance from the Judicial Conference Committee on Defender Services, we are writing to make a second ex parte request for permission to initiate a successive state post-conviction action challenging Mr. Howard's death sentence.

This second request stems from recent developments in Mr. Howard's case. The claim that we would like to assert in a state post-conviction petition is that the sole remaining aggravating circumstance supporting Mr. Howard's death sentence has recently been invalidated by an order dismissing the prior conviction that gave rise to the aggravator.

The guidance upon which we are relying is a memorandum dated December 9, 2010, written by Judge Claire V. Eagan in her role as Chair of the Judicial Conference Committee on Defender Services. For your convenience, the memorandum is enclosed with this letter. *See* Att. 1. We will refer to the letter hereinafter as "the Eagan Memorandum." The Eagan Memorandum reiterated that "Defender Services appropriation funds may not be used to represent an individual under a state-imposed death sentence in a state proceeding unless a presiding judicial officer in a federal judicial proceeding involving the individual has determined that such use of Defender Services appropriation funds is authorized by law." *Id.* at 2 (internal quotation marks omitted). To comply with that policy, we are submitting the instant request.

BOISE TRIAL OFFICE
702 W. IDAHO ST., STE. 1000
BOISE, IDAHO 83702
(208) 331-5500
FAX (208) 331-5525

POCATELLO TRIAL OFFICE
707 NORTH 7TH AVENUE
POCATELLO, IDAHO 83201
(208) 478-2046
FAX (208) 478-6698

We have conferred with the Capital Habeas Units for the District of Nevada and for the Eastern District of California. Both of those offices have informed us that their practice is to submit ex parte requests to the presiding federal judge when they seek permission to litigate in state court. Given that the request for approval is a purely internal matter relating to the judiciary's administrative oversight of Federal Defender agencies, an ex parte letter is a suitable vehicle for our request. It would consequently be inappropriate, in our opinion, for the Respondents in the federal habeas case to have a role in the process or notice of the request.

Mr. Howard's death sentence relied on two aggravating circumstances: (1) that Mr. Howard had previously been convicted of a violent felony for a robbery in Queens County, New York; and (2) that he committed the murder while robbing the victim. *See* ECF No. 338-22, at 2. The Nevada Supreme Court struck down the second aggravator in 2014. *See Howard v. State*, No. 57469, 2014 WL 3784121, at *6 (Nev. July 30, 2014) (per curiam). On May 22, 2018, the Queens County Supreme Court dismissed the New York robbery case. *See* Att. 2. The Queens County District Attorney's Office had thirty days to appeal the order if it desired to do so. *See* N.Y. Crim. Proc. Law § 460.10(1)(a). Undersigned counsel have conferred with the attorneys who represented Mr. Howard in the New York litigation and confirmed that no appeal was filed. Thus, the decision dismissing the New York case is now final. In light of that decision, and the earlier opinion from the Nevada Supreme Court, there are now no aggravators in place to sustain Mr. Howard's death sentence.

Under U.S. Supreme Court precedent, a death row inmate is entitled to raise a constitutional challenge to a death sentence when a prior conviction serving as an aggravator has been voided in the originating jurisdiction. *See Johnson v. Mississippi*, 486 U.S. 578, 584–90 (1988). Furthermore, in states that have made death sentences contingent on statutory aggravators, as Nevada has, *see* Nev. Rev. Stat. § 200.033, the presence of at least one such aggravator is constitutionally necessary for an execution to be lawfully carried out, *see, e.g., Sawyer v. Whitley*, 505 U.S. 333, 341–42 (1992); *Lowenfield v. Phelps*, 484 U.S. 231, 244 (1988). Since both of Mr. Howard's aggravators have now been nullified, Mr. Howard will invoke these authorities to contest his death sentence in Nevada state court.

The Eagan Memorandum sets forth a series of factors for "the presiding judicial authority" to consider in ruling on a request for permission by a Federal Defender agency to seek state post-conviction relief in a capital matter. *See* Att. 1, at 2–4. We believe that those factors counsel strongly in favor of allowing us to file in state court. (Factors that are articulated in the Eagan Memorandum but which have no bearing here are omitted.)

The first factor asks whether qualified state counsel are available. *See id.* at 3. For reasons elaborated upon in more detail below, the bar in Nevada cannot be assumed to have attorneys who could litigate the post-conviction petition as effectively as we could.

An additional factor is whether "the original state post-conviction counsel would be appointed for the" successive petition if the Federal Defenders were not. *Id.* Mr. Howard was represented in his initial state post-conviction action primarily by David Schieck. At present, Mr. Schieck is semi-retired and currently has as many cases as he desires. Carmine Colucci and John Graves were briefly involved in the initial post-conviction as well. Mr. Colucci is deceased. As for Mr.

2

Graves, undersigned counsel contacted him to discuss this matter and have been unable to get a response. In any event, though, he would clearly not be as well-suited to handle the case as our office. He last represented Mr. Howard more than thirty years ago, and therefore does not have the kind of familiarity with the case and relationship with the client that we do. Furthermore, in Mr. Howard's federal habeas case, he is challenging the performance that Mr. Graves rendered in the initial post-conviction action. It would make little sense for Mr. Graves to represent Mr. Howard in one case while Mr. Howard is accusing him of ineffectiveness in another. This factor therefore bolsters our case for approval to appear in state court.

Another factor concerns the "state court rules governing the appearance of counsel." *Id.* We have examined the pertinent authorities in Nevada and conducted preliminary research into the pool of Nevada attorneys who might be able to assist us administratively with the post-conviction action. Based on that examination, we are confident that—if the requested approval is given—we would be able to find local counsel with whom we could associate in state court. Local counsel would review and sign the pleadings, which we would draft, and our own signatures would appear alongside that of local counsel. The arrangement has been successful with our office as well as with other non-Nevada Federal Defenders who have litigated collateral challenges in the state, such as the Capital Habeas Units for the District of Arizona and for the Central District of California, with whom we have spoken. It would be an easy and straightforward process, and the factor therefore supports the grant of our request.

The next factor is whether "any unwarranted delay . . . would be occasioned by the lack of continuity in not having federal counsel handle" the state post-conviction work. *Id.* In our view, there would be such delay if we are not allowed to represent Mr. Howard in the contemplated post-conviction proceeding. We have a detailed understanding of the legal and factual background in Mr. Howard's case, which has been ongoing for more than thirty years and has generated a complex and convoluted procedural history. Our familiarity with the case will allow us to expeditiously litigate the post-conviction action. No other attorney will be nearly as conversant with the case as we are. A lawyer without our knowledge-base will need far more time to draft state-court pleadings, and will almost certainly require many more extensions than we would. Because we could avoid those delays, the factor weighs in favor of granting the request.

An additional factor brings up "the need to avoid disruption of the proceedings." *Id.* Our request would cause no disruption in the federal case, as we are not seeking a stay of the habeas action. Instead, we plan to litigate the state proceeding simultaneously with the federal habeas case.

The Eagan Memorandum also directs the presiding judge's attention to "the need to avoid disruption of the attorney/client relationship." *Id.* We have spent the last several years carefully building trust and rapport with Mr. Howard. It was not an easy task. He was understandably skeptical of defense attorneys, given the extremely upsetting experiences he has had with them over the last several decades. Most alarmingly, those experiences include being forced by his trial judge to accept the services of public defenders whose supervisor had expressed a desire to see him executed; having Patricia Erickson assigned as his federal habeas attorney, an individual who failed to comply with numerous deadlines, leading to Your Honor's eventual decision to

3

remove Ms. Erickson from the case and refer her to the Bar Association for potential disciplinary proceedings; and finally seeing Ms. Erickson replaced by the Capital Habeas Unit of the Nevada Federal Defender, an office which likewise had to be removed because of a conflict arising from the Erickson situation. After long and painstaking efforts, we have succeeded in establishing a warm, close, and highly effective dynamic with Mr. Howard, in which he finally has faith that we are zealously advocating for his interests and is willing to cooperate with our investigative efforts and follow our strategic advice. Knowing Mr. Howard as we do, we would not expect him to have the same harmonious relationship with another attorney. Rather, his interactions with such an attorney would likely become rancorous, leading to problems in the state post-conviction action that would probably spill over to our relationship with him as well. All parties would be better served if we retained control of the post-conviction action.

Turning to the next factor—"the number of claims to be exhausted," *id.*—we intend to raise only the single issue discussed earlier. Since the number of claims would be so small, it would not significantly slow down our work in federal court, providing another reason to approve.

Under the Eagan Memorandum, the "unique and complex nature of the claims" is something else to keep in mind, as is the question of "whether the investigation and research as to the" post-conviction claim "has already been done by the federal counsel." *Id.* We have done extensive research into the area and are generally well-versed in capital litigation. From our vantage point, we can say with some confidence that the claims proposed here are quite rare. It is unusual for a capital prior-conviction aggravator to be set aside in the home jurisdiction and even more uncommon for that to happen with the only aggravator in a case. We have already studied the limited caselaw on the subject closely and have a solid grasp of it. Moreover, as Federal Defender attorneys who exclusively practice in the capital arena, we have access to networks and resources that can provide valuable information and advice as we litigate this complicated issue. Additionally, we have been following the New York litigation attentively and are thoroughly informed on how it evolved and how it led to the dismissal order that would be at the heart of the new post-conviction case. For these reasons, the "unique and complex nature of the claim" factor should tilt the calculus powerfully toward approval.

In part, the next factor has to do with "the reasonable expectation of the amount of funds that would be expended by federal counsel litigating the" claim. *Id.* For the claim at issue, the amount would be modest. The claim is a narrow one and it is almost entirely legal. No factual investigation will be called for, no evidentiary hearing will be requested, and no experts will be retained. Primarily, we will have only to draft various pleadings, an inexpensive undertaking that can be accomplished solely within our office. The case would consume few funds, and the factor militates in favor of granting the request.

The same factor also encompasses "consideration of whether it is likely that the state court would hear" the claim on the merits. *Id.* at 4. That likelihood is high. The Nevada courts will review a claim based on a new development so long as the claim is raised "within 'a reasonable time' after the basis for the claim becomes available." *Rippo v. State*, 368 P.3d 729, 738 (Nev. 2016) (quoting *Hathaway v. State*, 71 P.3d 503, 507–08 (Nev. 2003)), *vacated on other grounds by* 137 S. Ct. 905 (2017) (per curiam). A "reasonable time" is one year from when the claim becomes available. *See id.* at 739–40. The New York order was issued on May 22, 2018. *See*

4

Att. 2. If this request is granted, we will move quickly to file in state court and will easily satisfy the one-year standard established by *Rippo*. Following their own precedent, the Nevada courts will presumably reach the merits of the claim.

The final factor is "whether it would be in the interests of justice" to allow federal counsel to proceed in state court. Att. 1, at 4. While all of the reasons mentioned earlier show that it would, one additional reason warrants comment as well: the possibility not only of merits review, but of merits relief. Both of the aggravators in Mr. Howard's case have been definitively invalidated and he cannot be legally executed with no aggravators. The claim should therefore be presented as quickly and effectively as possible. For all of the reasons stated, we are the ideal attorneys to do so.

In sum, we feel strongly that we satisfy the criteria outlined by the Eagan Memorandum. We are the only attorneys steeped in the case, and we would seek relief knowledgeably, expeditiously, and inexpensively, without causing any disruption or delay in the federal case and without subjecting Mr. Howard and a new attorney to an inevitably difficult relationship. We therefore respectfully request your permission to file a successive state petition on Mr. Howard's behalf.

Sincerely,

Jonah J. Horwitz
Assistant Federal Defender
Capital Habeas Unit
Federal Defender Services of Idaho

Deborah A. Czuba
Supervising Attorney
Capital Habeas Unit
Federal Defender Services of Idaho

Encls.

# Attachment 1
(Memorandum of Judge Claire V. Eagan on Use of Defender Services
Appropriated Funds, Dated December 9, 2010)

**Judicial Conference of the United States**
**Committee on Defender Services**
United States District Court
411 Page Belcher Federal Building
and United States Courthouse
333 West Fourth Street
Tulsa, OK 74103

Chair
Claire V. Eagan

Telephone:
(918)699-4795
Fax:
(918)699-4787

Members
Deborah A. Batts
Catherine C. Blake
Sandra S. Beckwith
Kathleen Cardone
Raner C. Collins
Anne C. Conway
Jonathan W. Feldman
Katharine Sweeney Hayden
F. Dennis Saylor, IV
Bobby E. Shepherd
John D. Tinder
Ricardo M. Urbina

December 9, 2010

MEMORANDUM

To:     Judges, United States District Courts
       United States Magistrate Judges
       Federal Public/Community Defenders
       CJA District Panel Attorney Representatives

From:  Judge Claire V. Eagan *Claire V. Eagan*
       Chair, Judicial Conference Committee on Defender Services

RE:    USE OF DEFENDER SERVICES APPROPRIATED FUNDS BY FEDERAL APPOINTED
       COUNSEL FOR STATE COURT APPEARANCES IN CAPITAL HABEAS CORPUS CASES

There are instances in federal capital habeas corpus proceedings (brought pursuant to 28 U.S.C. § 2254) when the presiding judicial officer determines that an unexhausted claim[1] in a federal habeas corpus petition must be exhausted in state court. The purpose of this memorandum is to provide guidance to the presiding judicial officer when determining whether to authorize an appointed CJA panel attorney or federal defender organization (FDO) to expend defender services appropriated funds in state court to exhaust that claim.

---

[1] For purposes of this memorandum, reference to a single claim will be understood to encompass multiple claims as well.

### Background

More than a decade ago, the Judicial Conference's Committee on Defender Services considered the issue of whether federal funds could be expended by federal practitioners when exhausting a claim in state court, and resolved that "Defender Services appropriation funds may not be used to represent an individual under a state-imposed death sentence in a state proceeding unless a presiding judicial officer in a federal judicial proceeding involving the individual has determined that such use of Defender Services appropriation funds is authorized by law." (Report of the Committee on Defender Services to the March 1999 Judicial Conference, pp. 9-10.) Recently, the Defender Services Committee was asked to consider guidance for presiding judicial officers when making the determination of when federal funds may be expended to exhaust a claim in state court. (This memorandum is not intended to address whether it is permissible for a claim to be remanded to state court for exhaustion. Rather, once that determination has been made, the issue is whether federal funds should be expended to pursue the exhaustion in state court.)

On April 1, 2009, the United States Supreme Court held, in *Harbison v. Bell*, 556 U.S. __ (2009), that 18 U.S.C. § 3599 authorizes FDOs (and, under its interpretation of the statute, federally appointed panel attorneys) to furnish representation with Defender Services funding in state clemency proceedings. Of note, the Supreme Court's majority opinion, in effect, also endorsed the Defender Services Committee's policy permitting FDOs to exhaust claims in state court, when authorized by a federal judge. Footnote seven of the *Harbison* decision states:

> Pursuant to § 3599(e)'s provision that counsel may represent her client in "other appropriate motions and procedures," a district court may determine on a case-by-case basis that it is appropriate for federal counsel to exhaust a claim in the course of her federal habeas representation.

*Harbison*, 556 U.S. at __ n.7. The footnote likewise applies to panel attorneys because they, too, are "federal [appointed] counsel." Accordingly, *Harbison* appears to have settled that the use of Defender Services appropriated funds to exhaust a claim in state court is authorized by law in capital § 2254 habeas corpus proceedings.

### Guidance

The Committee on Defender Services recommends that, in making the determination of whether it is appropriate in an individual case to authorize funding under § 3599 for federal habeas counsel to exhaust a claim in state court in the course of the federal capital habeas representation, the presiding judicial authority should consider the following factors, subject to any other governing authority such as circuit or local court rules:

- the unavailability of qualified state counsel (certification by the U.S. Attorney General under chapter 154 of title 28, United States Code, that the state has a mechanism for appointing competent post-conviction counsel and providing adequate compensation would be an indication that qualified counsel may be available[2]);

- the unavailability of state funds for investigative and expert services (certification by the U.S. Attorney General under chapter 154 of title 28, United States Code, that the state has a mechanism for providing reasonable litigation expenses would be an indication that state funds may be available[2]);

- for CJA panel attorneys, documentation verifying a request for state funding of counsel and/or investigative and expert services in the particular case, such as an order authorizing or denying funds;

- whether the original state post-conviction counsel would be appointed for the exhaustion proceedings, or new counsel who is unfamiliar with the case (if the original state post-conviction counsel is available, consideration should be given to whether ineffective assistance of counsel claims have been alleged in the federal petition regarding his/her earlier representation of the petitioner);

- state court rules governing the appearance of counsel;

- any unwarranted delay that would be occasioned by the lack of continuity in not having federal counsel handle the exhaustion in state court;

- the need to avoid disruption of the proceedings;

- the need to avoid disruption of the attorney/client relationship;

- the number of claims to be exhausted;

- the unique and complex nature of the claims to be exhausted;

- whether the investigation and research as to the unexhausted claim has already been done by the federal counsel;

- the reasonable expectation of the the amount of funds that would be expended by federal counsel litigating the unexhausted claim in state court, including

---

[2] At the present time, states cannot be certified since the Attorney General has not yet promulgated final regulations for this purpose.

      consideration of whether it is likely that the state court would hear the unexhausted claim on its merits;

- whether it would be in the interests of justice; and

- any other factors that would interfere with the need to ensure effective and timely representation of the petitioner.

Judges are encouraged to apply these factors on an individualized, case-by-case basis. Accordingly, general or standing orders permitting state-court representation would not be consistent with this guidance.

A decision by the presiding judicial officer that federal funds should not be expended in the state court-exhaustion proceedings would not preclude federal panel attorney counsel from seeking state court appointment as counsel for the petitioner, provided no federal funds are utilized.

If you have any questions regarding the guidance provided in this memorandum, please contact the legal duty day attorney in the Administrative Office's Office of Defender Services at (202) 502-3030 or by email to ODS_LPB@ao.uscourts.gov.

# Attachment 2
(Queens County Supreme Court decision and order to vacate and dismiss indictment and conviction of Samuel Howard, Dated May 22, 2018)

SUPREME COURT
CRIMINAL TERM - PART K-20 - QUEENS COUNTY
125-01 QUEENS BLVD., KEW GARDENS, NY 11415

PRESENT:

HON. RONALD D. HOLLIE,
JUSTICE

---

THE PEOPLE OF THE STATE OF NEW YORK:

-against-

SAMUEL HOWARD,

      Defendant
---------------------------------------------X

Ind. No. 1227/78
Motion To Vacate The
Conviction And To Dismiss
The Indictment Pursuant To
C.P.L. § 380.30(1)
C.P.L. § 330.30(1)
C.P.L. § 440.10(1)

The following papers numbered
1 to 5 submitted on this motion

Joel M. Cohen, Esq.
For the Motion

Richard A. Brown, D.A.
By: A.D.A. Edward D. Saslaw, Esq.
Opposed

| | |
|---|---|
| Notice of Motion, and Affidavits Annexed............... | ........1-2....... |
| Answering Reply Affidavits...................................... | ......... 3.......... |
| Exhibits....................................................................... | ..........4.......... |
| Memorandum of Law............................................... | ..........5.......... |

The defendant's motion is granted. See the annexed decision.

Date: May 22, 2018             RONALD D. HOLLIE, J.S.C.

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK | : | BY: RONALD D. HOLLIE, J.S.C. |
| - against - | : | DATED: May 22, 2018 |
| SAMUEL HOWARD, | : | IND. NO.: 1227/78 |
| Defendant. | : | DECISION |

In its Order dated January 31, 2018, this Court granted the defendant's motion to the extent that a hearing was ordered. That hearing was conducted on April 19, 2018 and the parties have no dispute as to the following facts:

1) During jury selection, on the above referenced indictment, the defendant failed to appear and a bench warrant was issued on 7/10/79.

2) The trial continued on his absence and he was found guilty of Robbery in the First Degree and Aggravated Harassment on 7/13/79.

3) The defendant has not been sentenced by the trial court and the bench warrant remains active.

4) Since at least 1980, the New York State authorities had actual knowledge that the defendant was arrested and in continued custody by both California and Nevada.

5) In now over 37 years, the People have not attempted to extradite the defendant to New York or make any other reasonable effort to produce the defendant for sentencing.

It is the defendant's position that he is entitled to relief afforded by *C.P.L.§380.30 (1)* in that his sentence must be pronounced without reasonable delay. He argues that the 37 year delay was unreasonable given that New York authorities knew where he was incarcerated and they made no effort to produce him fo sentence on his New York conviction.

It is the People position that if a Defendant absconds from New York and is arrested and incarcerated on an unrelated matter in another state, People have no obligation to make reasonable efforts to produce the Defendant for sentencing in this state, even if they know where he was incarcerated.

The New York rule assumes the defendant has been prejudiced by unreasonable delay, so the burden is on the State and its agents to show the delay was reasonable *(People v. Drake, 61 NY2d 359)*. It is this Court's opinion that once a convicted defendant has absconded from New York, is incarcerated in another jurisdiction and New York is aware of said incarceration, the minimal obligation by the State and its agents is to attempt to produce that defendant for sentence. That attempt would be sufficient to satisfy the State's obligation under *C.P.L.§ 380.30 (1)*, to avoid a finding of unreasonable delay. Legal process does exist to attempt to bring a defendant incarcerated in another jurisdiction back to New York. In this case, The People chose not to attempt to produce the defendant for sentence.

It is therefore this Court's decision and Order that Samuel Howard conviction under indictment #1227/78 is vacated and the indictment dismissed under *C.P.L. §380.30 (1), 330.30* and for *440.10*.

May 22, 2018

Ronald D. Hollie, J.S.C.